UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAD J. BUSHMAN, and
TAMARA R. STAFFORD, et al.,

        Plaintiffs,

                                CASE NO. 14-CV-10011
v.                                HONORABLE GEORGE CARAM STEEH

AMERICAN TITLE
COMPANY OF WASHTENAW, et al.,

        Defendants.
_____/

### ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS (Doc. 74)

Residential home sellers brought this proposed class action alleging defendants defrauded them and violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901 *et seq.*, when they listed real estate transfer taxes on HUD-1 settlement statements that allegedly were not due. Ten defendants remain comprised of three title insurance companies and seven title agencies (collectively "defendants")[1]. Named plaintiffs are two married couples and nine individuals. Now before the court is defendants' joint motion to dismiss the second amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The remaining counts are fraud and violations of the MCPA. Having heard oral argument on the motion, and having carefully considered the parties' written submissions, defendants' motion to dismiss shall be granted.

---

[1] Plaintiffs also allege claims against John Doe defendants 1 through 100.

-1-

## I. Factual Background

Plaintiffs sold their Michigan homes between 2009 and 2012. Plaintiffs allege they incorrectly paid Michigan State real estate transfer taxes ("SRETT") in connection with those sales, although no such taxes were owed.[2] Michigan law specifically exempts from the transfer tax the sale of a primary residence whose state equalized value "SEV" at the time of sale is less than or equal to its value at the time of its initial purchase by the seller. Mich. Comp. Laws § 207.526(u).[3] At oral argument, defendants represented that at the time the lawsuit was filed, nine of the eleven plaintiffs could have filed a timely claim for a tax refund. To date, no plaintiff filed a claim for a tax refund. Plaintiffs allege that defendants are in the real property title insurance and closing business, and that they perform numerous underwriting and title agency functions, including, among other things, conducting the settlement and closing of real estate sales transactions. As part of these services, plaintiffs allege that defendants collect and disburse sales proceeds, and charged and collected from plaintiffs real estate transfer taxes. Plaintiffs allege that in connection with each sale, defendants prepared and issued a deed and a HUD-1 settlement statement which stated that plaintiffs were obligated to pay SRETT. At oral argument, defendants represented that the burden to pay the tax remains on the seller, and the title companies have no duty to hold and disburse the money. (Doc. 84 at 18).

---

[2] SRETT must be paid by the seller at a rate of $3.75 per $500 of property, within 15 days of the sale. Mich. Comp. Laws § 207.525.

[3] Mich. Comp. Laws § 207.526(u) provides that transfers are exempt from the tax "if the state equalized valuation of that property is equal to or lesser than the state equalized valuation on the date of purchase or on the date of acquisition by the seller or transferor for that same interest in property."

Plaintiffs originally filed this suit in Washtenaw County Circuit Court against numerous title insurance companies and title agencies, some of which remain here, as well as against the State Treasurer, the State of Michigan, and the Michigan Department of the Treasury ("Department"). Defendants removed on the basis of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one defendant is a citizen of a different state than one of the plaintiffs, and the amount in controversy exceeds $5,000,000. The average tax overpayment alleged in this case is approximately $2,000, and plaintiffs allege the class includes tens of thousands of members, thus as much as $19 million is at stake in this litigation. On April 15, 2014, based, in part, on the parties' stipulation, the State Treasurer and the State of Michigan were dismissed and this court remanded the claims against the Department to Washtenaw County Circuit Court. (Doc. 50). Plaintiffs have since dismissed those claims. On May 3, 2014, plaintiffs filed their first amended complaint here. On August 21, 2014, this court granted defendants' motion to dismiss the first amended complaint for lack of standing because plaintiffs failed to connect their alleged overpayment of SRETT to any particular defendant, and granted plaintiffs' motion for leave to file a second amended complaint to cure that deficiency. On September 10, 2014, plaintiffs filed their second amended complaint.

In their second amended complaint, plaintiffs set forth four counts: (I) violations of the MCPA, (II) fraud, (III) innocent misrepresentation, and (IV) breach of contract. Defendants sought dismissal of all claims. In their written response, plaintiffs stipulated to the dismissal of their breach of contract claim, and at oral argument, plaintiffs stipulated to the dismissal of their innocent misrepresentation claim. Only the fraud and MCPA claim remain. For the reasons set forth below, plaintiffs' fraud claim shall be dismissed as

facially deficient, and plaintiffs' MCPA claim shall be dismissed under that statute's exemption for certain claims against insurance companies. The court does not address defendants' alternative arguments for dismissal.[4]

## II. Standard of Law

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in favor of the plaintiff, accept the factual allegations as true, and determine whether the allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The pleading must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Although the complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level[.]" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The court should first identify any conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

---

[4]Defendants also argue (1) plaintiffs have failed to exhaust their administrative remedies, (2) plaintiffs' exclusive remedy is a tax refund from the State, (3) plaintiffs' claims are barred by the voluntary payment doctrine, and (7) plaintiffs lack standing against defendant Greco Title Agency.

### III. Analysis

**A.    Fraud Claims**

Fraudulent misrepresentation requires proof of six elements: (1) the defendant made a material representation, (2) the representation was false, (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without any knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976); *MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 662 (6th Cir. 2013). Defendants dispute that plaintiffs have pled reasonable reliance or that defendants made a misrepresentation at all.

**1.    Justifiable Reliance**

In order to state a fraudulent misrepresentation claim, a plaintiff must have reasonably relied on the false representation. *Foreman v. Foreman*, 266 Mich. App. 132, 175 (2005). "There can be no fraud where a person has the means to determine that a representation is not true." *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 696 (2009) (internal quotation marks and citations omitted). Defendants argue persuasively that plaintiffs' fraud claims are barred because the real estate transfer tax law was available to plaintiffs and thus, they could not have been defrauded. *See Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464 (1994) (no fraud claim based on plaintiff's allegation that his supervisor promised him he was not an at-will employee where employment documents clearly provided that he was one); *Peplinski v. Coldwell Banker Walters Real Estate, Inc.*,

No. 217419, 2000 WL 33407425, *2 (Mich. App. Aug. 22, 2000) (no fraud where warranty deed stated conveyance was subject to easements on record and easement was validly recorded). Defendants also rely on *Cummins* where the court dismissed homeowners' fraud claims against township building officials who allegedly imposed false building code requirements and misrepresented the law where plaintiffs had access to the building code. *Id.* at 699. *Cummins* is analogous to the present situation. Plaintiffs' argument here that defendants had superior knowledge of the law and thus, plaintiffs' reliance on a statement on the HUD-1 forms was reasonable, is no different than that situation in *Cummins* where building officials would clearly have superior knowledge of the township building code as compared to knowledge of the law by simple homeowners. As the court noted in *Cummins*, "[p]eople are presumed to know the law." *Id.* at 698 (internal quotation marks and citations omitted). Given that Michigan's real estate tax laws are a matter of public record and were readily available to plaintiffs, they cannot show reasonable reliance on a line item on the HUD-1 settlement statement as a representation of their tax liabilities.

Plaintiffs argue that "where a party with superior knowledge issues a statement on which others can be expected to rely, that party is liable for any resulting damage." (Doc. 80 at 6). In support of this claim, plaintiffs rely on Restatement (Second) of Torts, § 552 which governs negligent misrepresentation claims. Negligent misrepresentation is a distinct tort from fraudulent misrepresentation, the former of which requires that a plaintiff "prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Alfieri v. Bertorelli*, 295 Mich. App. 189, 194 (2012) (internal quotation marks and citations omitted). Here, plaintiffs have not alleged a negligent misrepresentation claim nor have they alleged that defendant

-6-

owed a duty to them. In contrast to a negligent misrepresentation claim, a fraudulent misrepresentation claim requires scienter, in other words, that the defendants acted intending that the defrauded party rely on the misrepresentations which were knowingly or recklessly made. In this case, defendants owed no professional duty of care to plaintiff-sellers; thus, it would not be reasonable for plaintiffs to rely on a one-line statement of transfer taxes itemized on the HUD-1 form as proof of their actual tax liability.

Plaintiffs also seek to rely on *Williams v. Polgar*, 391 Mich. 6 (1974) to support their argument that their reliance on statements made in the HUD-1 settlements was reasonable. In that case, plaintiffs purchased property from defendant seller who supplied them with a faulty abstract of title prepared by defendant abstract company. *Id.* at 10. Although plaintiffs were not in privity of contract with the abstract company, the Michigan Supreme Court held that the abstract company could be liable in tort for *negligent* misrepresentation because plaintiffs were reasonably foreseeable beneficiaries of the contract. *Id.* at 22-23. The court stressed that the case did not involve a fraud claim which requires a showing of scienter, or conscious dishonesty. *Id.* at 21. By contrast, in this case, plaintiffs proceed under the theory of fraud; thus, the holding of *Polgar* does not apply. Plaintiff-sellers cannot rely on the professional duty that defendants owed to home buyers to establish reasonable reliance.

At oral argument, plaintiffs argued that *Hyma v. Lee*, 338 Mich. 31 (1953) stands for the proposition that where the alleged tortfeasor has superior knowledge with respect to the subject matter of the alleged misrepresentations, the plaintiffs' reliance on those disclosures is reasonable. (Doc. 84 at 40-41). The unique facts of *Hyma* do not support plaintiffs' position. In that case, plaintiffs were regular churchgoers of defendant pastor's

congregation and believers of spiritualism. *Id.* at 33. As part of their close personal relationship with defendant pastor, the plaintiffs believed that she was a spiritual medium who had the power to communicate with the spirits of the dead. *Id.* Because of plaintiffs' belief in the pastor's guarantees that voices coming directly from God promised them great wealth if they invested in what later proved to be a losing transaction, plaintiffs relied on her bad financial advice to their peril. *Id.* at 34. The Michigan Supreme Court noted that plaintiffs made no claim that defendant had expertise or "superior knowledge with reference to business transactions," but based its holding that defendant could be liable for fraud based on special relationship of trust and confidence that existed between the pastor and her congregation. *Id.* at 39-40. The unusual facts of *Hyma* are unlike the instant dispute which involved an arms length business transaction where plaintiffs shared no special relationship of trust and confidence with defendants.

 Cases plaintiffs rely upon to show justifiable reliance are primarily cases involving negligent misrepresentation claims, which require as an element of those causes of action that the defendant owed a professional duty of care to the plaintiff, an element which is not part of a fraud claim, and furthermore, it is undisputed that defendants here owed no duty of care to plaintiffs, contractual or otherwise. Those cases fail to support plaintiffs' fraud claim. In addition, plaintiffs have failed to cite to any authority supporting the proposition that defendants may be liable on the basis that they allegedly had superior knowledge of plaintiffs' tax liability, as the tax laws are publically available and people are presumed to know the law. "There can be no fraud where a person has the means to determine that a representation is not true." *Nieves*, 204 Mich. App. at 464 (citing *Montgomery Ward & Co. v. Williams*, 330 Mich. 275 (1951)). Plaintiffs could have protected their rights by hiring

-8-

counsel to represent them in the sale of their homes, and defendants cannot be liable for allegedly defrauding them on the facts as they are alleged to exist here. In sum, plaintiffs have not sufficiently pled fraud as they cannot show justifiable reliance where they admittedly were on notice of the SEV values of their homes based on tax forms provided to them, and the law regarding real estate transfer taxes was readily available to them.

### 2.  False Statements

Defendants also argue that plaintiffs' fraud claims are facially deficient because plaintiffs have not alleged that any false statements were made. Rather, they contend the amounts listed for real estate transfer taxes on the HUD-1 forms merely state the itemized amounts actually charged in the closing transactions. In support of their fraud claims, plaintiffs rely solely on the HUD-1 statements which contain one line setting forth the transfer taxes charged. Defendants rely on *Arthur v. Ticor Title Ins. Co.*, No. 07-1737, 2008 WL 7854915 (D. Md. Mar. 11, 2008), *aff'd*, 569 F.3d 154 (4th Cir. 2009) and *Woods v. Stewart Title Guar. Co.*, No. CCB-06-0705, 2006 WL 2135518 (D. Md. July 28, 2006) for the proposition that statements of charges actually imposed which are listed on a HUD-1 form do not constitute "false" statements, even where the charges are in error. In both cases, homeowners brought negligent misrepresentation claims against title insurers for overcharging them for title insurance when they refinanced their homes. Homeowners claimed that title insurers made false statements because the HUD-1 statements set forth an incorrect rate by failing to give them the discount required by state law for certain refinancing transactions. *Arthur*, 2008 WL 7854915, at *1; *Woods*, 2006 WL 2135518, at *1. In both cases, the district courts dismissed the negligent misrepresentation claims reasoning that the HUD-1 statements accurately described the premiums charged, and did

not make any representations as to the legality or accuracy of the amount charged and collected. *Arthur*, 2008 WL 7854915, at *6; *Woods*, 2006 WL 2135518, at *3.

Plaintiffs argue that these cases are distinguishable because in this case, the HUD-1 statements misrepresented the legality and accuracy of the amount being charged and set forth false charges for SRETT which were not owing. The same could be said, however, of the excessive premiums charged in the above cited cases. Just as in those cases, the amount listed was the amount charged. The fact that a charge is listed on a HUD-1 settlement statement does not mean that the title insurer or title agency guaranteed to the seller, with whom it had no contractual relationship, the legal accuracy of the charge. Here, plaintiff-sellers could have discovered the error in the tax amount listed by reference to state law and the simple comparison of the SEV value at the time they sold their homes to the value at the time of purchase. In their reply brief, defendants argue persuasively that if statements in the HUD-1 form as to amounts charged can establish fraud, then "every allegedly improper or excessive charge would become a fraud once written down." (Doc. 82 at 5). Such a result is at odds with the very nature of a fraud claim, which as an intentional tort, requires scienter in order for liability to attach. Having failed to allege that the HUD-1 settlement form made a false statement, plaintiffs have failed to meet the strictures of Federal Rule of Civil Procedure 9(b) and defendants are entitled to dismissal of plaintiffs' fraud claim (Count II).

**B.    Michigan Consumer Protection Act**

Defendants argue that plaintiffs' MCPA claim also must be dismissed because defendants are title insurance companies and title agencies regulated by the insurance commissioner and their alleged misconduct falls under the purview of the Insurance Code. By statute, the MCPA specifically exempts certain claims made unlawful by the Insurance Code:

> (3) This act does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by chapter 20 of the insurance code of 1956 [the Uniform Trade Practices Act], 1956 PA 218, MCL 500.2001 to 500.2093.

Mich. Comp. Laws § 445.904(3). The MCPA further provides that "[t]he burden of proving an exemption from this act is upon the person claiming the exemption." Mich. Comp. Laws § 445.904(4).

Defendants rely on *Logan v. Blue Water Title Co.*, No. 185053, 1996 WL 33356941, at *1 (Mich. Ct. App. Oct. 1, 1996), where the court held that plaintiffs could not recover under the MCPA from a title insurance company and title agency that allegedly charged them for unauthorized processing and escrow fees in connection with closings on plaintiffs' purchase of real estate. The court ruled that defendants' alleged misconduct was governed by the Insurance Code which authorizes the insurance commissioner "to stop any unfair method of competition or practice which may be otherwise undefined," Mich. Comp. Laws § 500.2043, and thus, was exempt from the protections of the MCPA. *Id.* Similarly, in this case, the alleged deceptive practices by defendants is subject to supervision and review by the insurance commissioner and thus, plaintiffs may not recover under the MCPA.

-11-

Defendants also rely on *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008) (Lawson, J.) and *Cromer v. Safeco Ins. Co. of America*, No.2:09-CV-13716, 2010 WL 1494469 (E.D. Mich. Apr. 14, 2010) (Rosen, J.) in support of their argument that plaintiffs' MCPA claim must be dismissed.  In *Hoving*, the district court dismissed plaintiff's MCPA claim where the insured alleged that defendant insurer had charged rates in excess of those scheduled in the manual on file with the insurance commissioner.  545 F. Supp. 2d at 669.  The court held that "[a]ny act that could be deemed "unfair or deceptive" . . . is exempted from the MCPA as long as the act was performed by an insurance company subject to regulation by the insurance commissioner." *Id.*  The court rejected plaintiff's argument that he was not alleging any violation of the Insurance Code, ruling that the MCPA exemption does not require that a plaintiff plead a violation of Chapter 20, but only that the contested "method, act or practice" be unlawful under Chapter 20.  *Id.*

In *Cromer*, plaintiff brought a MCPA claim against her insurer to challenge the denial of her fire loss claim.  2010 WL 1494469, at *4.  The court held that the 2000 amendments to the MCPA, codified at Mich. Comp. Laws § 445.904, "eliminated the ability to pursue claims against insurance companies under the MCPA." *Id.*  More specifically, the court ruled that insurance companies are not subject to suit under the MCPA where there conduct is regulated by the Insurance Code.  *Id.*  (collecting cases).

Plaintiffs argue the MCPA exemption for insurance companies does not apply to their claims because the Insurance Code does not specifically regulate the failure of defendants to determine tax liabilities and to apply tax exemptions.  Plaintiffs have taken an overly constrained interpretation of the Insurance Code.  The Insurance Code

-12-

specifically provides that the commissioner can regulate any "act or practice [that] is unfair or deceptive" by an insurance company. Mich. Comp. Laws § 500.2043(1). Under this broad language, the title insurance company defendants have met their burden of demonstrating that they are exempt from the MCPA. Defendants argue that the MCPA exemption for insurance companies also applies to title agents as they are licensed and subject to oversight by the Michigan Department of Insurance and Financial Services, *see* Mich. Comp. Laws § 500.7317. Accordingly, plaintiffs' MCPA claim (Count I) as to all defendants should be dismissed.

## IV. Conclusion

For the reasons set forth above, defendants' joint motion to dismiss (Doc. 74) is GRANTED.

**IT IS SO ORDERED**.

Dated: April 2, 2015

                                         s/George Caram Steeh
                                         GEORGE CARAM STEEH
                                         UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 2, 2015, by electronic and/or ordinary mail and also on Scott M. Hare, Scott Michael Hare, Attorney at Law, 437 Grant Street, Suite 1806, Pittsburgh, PA 15219.

s/Barbara Radke
Deputy Clerk